IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| IN RE CENTRAL EUROPEAN DISTRIBUTION CORP. SECURITIES LITIGATION | : | Civil Action No. 11-6247 (JBS-KMW) |

| | | |
|---|---|---|
| JEFFREY GRODKO, Plaintiff, v. CENTRAL EUROPEAN DISTRIBUTION CORPORATION, et al., Defendants. | : : : : : : : : : : | Civil Action No. 12-5530 (JBS-KMW) |

| | | |
|---|---|---|
| PUERTO RICO SYSTEM OF ANNUITIES AND PENSIONS FOR TEACHERS, Plaintiff, v. CENTRAL EUROPEAN DISTRIBUTION CORPORATION, et al., Defendants. | : : : : : : : : : : : | Civil Action No. 12-5531 (JBS-KMW) |

**OPINION**

APPEARANCES:

Daniel S. Sommers, Esq.
Cohen, Milstein, Sellers & Toll, PLLC
1100 New York Avenue, NW
Suite 500 West
Washington, DC 20005
     -and-
Michael Benjamin Eisenkraft, Esq.
Cohen, Milstein, Sellers & Toll, PLLC
88 Pine Street
14th Floor
New York, NY 10005

```
          -and-
Mark R. Rosen, Esq.
Barrack, Rodos, & Bacine
One Gateway Center
Suite 2600
Newark, NJ 07102
     Attorneys for Lead Plaintiffs Arkansas Public Employees
     Retirement and Fresno County Employees' Retirement
     Association

Tina Moukoulis, Esq.
Law Office of Bernard M. Gross, PC
John Wanamaker Building
Suite 450
Juniper and Market Streets
Philadelphia, PA 19107
     Attorney for Lead Plaintiff Movant the Prosperity Group;
     Attorney for Plaintiff Steamfitters Local 449 Pension Fund;
     Attorney for Lead Plaintiff Movants Medvezhonok Holdings
     Limited, Lancrenan Investments Limited, Roselia Limited, and
     the Prosperity Subsidiary Group

Tina Moukoulis, Esq.
     -and-
David Avi Rosenfeld, Esq.
Robbins Geller Rudman & Dowd LLP
58 South Service Road
Suite 200
Melville, NY 11747
     Attorneys for Lead Plaintiff Movant Protsvetaniye Holdings
     Limited

Joseph J. Depalma, Esq.
Lite Depalma Greenberg, LLC
Two Gateway Center
12th Floor
Newark, NJ 07102
     Attorney for Plaintiff Tim Schuler

Bruce Daniel Greenberg, Esq.
Jeffrey Alan Shooman, Esq.
Lite Depalma Greenberg, LLC
Two Gateway Center
12th Floor
Newark, NJ 07102
     Attorneys for Lead Plaintiff Movant Harry Nelis and
     Plaintiff Jeffrey Grodko
```

2

Peter S. Pearlman, Esq.
Cohn, Lifland, Pearlman, Herrmann, & Knopf, LLP
Park 80 West Plaza One
250 Pehle Ave., Suite 401
Saddle Brook, NJ 07663
    -and-
Samuel H. Rudman, Esq.
Coughlin, Stoia, Geller, Rudman, & Robbins, LLP
58 South Service Road
Suite 200
Melville, NY 11747
    Attorneys for Plaintiff Puerto Rico System of Annuities and
    Pensions for Teachers

Kenneth J. Cesta, Esq.
Hoagland, Longo, Moran, Dunst & Doukas, LLP
40 Paterson St.
New Brunswick, NJ 08901
    -and-
Robert J. Del Tufo, Esq.
Skadden, Arps, Slate, Meagher & Flom, LLP
Four Times Square
New York, NY 10036
    Attorneys for Defendant Central European Distribution
    Corporation

**SIMANDLE**, Chief Judge:

## I.    INTRODUCTION

    This case involves several federal securities class actions

brought by Central European Distribution Corporation ("CEDC")

shareholders under §§ 10(b) and 20(a) of the Securities Exchange

Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated

thereunder. On August 22, 2012, the Court issued an Order

("August 22, 2012 Order") [Docket Item 61][1] in Civ. No. 11-6247,

In re Central European Distribution Corp. Securities Litigation

---

    [1]The lead case in this matter is Civ. No. 11-6247. All
docket item references are to the 11-6247 docket unless otherwise
noted.

("CEDC I"). The August 22, 2012 Order appointed lead plaintiff and lead counsel, consolidated two cases, and ordered that any other cases filed in or transferred into this district arising out of the same subject matter shall be consolidated with this action. In September of 2012, two cases, Grodko v. CEDC ("Grodko action") and Puerto Rico System of Annuities and Pensions for Teachers v. CEDC ("Puerto Rico action"), were transferred into this district from the Southern District of New York and consolidated with CEDC I pursuant to the August 22, 2012 Order. Parties from the transferred cases filed two motions either objecting to or seeking relief from the August 22, 2012 Order: (1) Plaintiff Jeffrey Grodko and lead plaintiff movant Harry Nelis' First Motion For Relief From This Court's August 22, 2012 Order ("Motion for Relief") [Docket Item 72], which argues that CEDC I and the Grodko action are distinct and should not be consolidated, and (2) the Motion Of Named Plaintiff Puerto Rico System Of Annuities And Pensions For Teachers' Objection To The August 22, 2012 Opinion And Order ("Puerto Rico's Objection") [Docket Item 77], which objects to the lead plaintiff appointment in CEDC I.[2]

---

[2]This action has five motions presently pending before the Court: (1) Motion to Appoint Harry E. Nelis as Lead Plaintiff and Motion to Appoint Pomerantz Grossman Hufford Dahlstrom & Gross, LLP as Lead Counsel in Civ. No. 12-5530 [Docket Item 78]; (2) Motion to Appoint the Prosperity Subsidiary Group as Lead Plaintiff and Motion to Appoint Robbins Geller Rudman & Dowd, LLP and the Law Offices of Bernard M. Gross as Co-Lead Counsel in

For the reasons explained herein, the Court will grant the Motion for Relief and allow the Grodko action to proceed separately from CEDC I. The reasons for de-consolidating the Grodko action apply to the Puerto Rico System action, which will also be de-consolidated. But the three actions will be coordinated for discovery and case management purposes. Because the Court will de-consolidate the Puerto Rico action from CEDC I, the Court will dismiss Puerto Rico's objection as moot.

## II.  BACKGROUND

This section outlines the CEDC I, Grodko, and Puerto Rico actions' procedural history and the relevant factual background.

### A. Procedural History - CEDC I

Plaintiff Steamfitters Local 449 Pension Fund commenced Civ. No. 11-6247 in the District of New Jersey by filing a Complaint against the Central European Distribution Corporation ("CEDC"),

---

Civ. No. 12-5530 [Docket Item 80]; (3) Motion for 28 U.S.C. § 1292(b) Certification for Immediate Interlocutory Appeal [Docket Item 62]; (4) First Motion for Relief from this Court's August 22, 2012 Order On Motions to Appoint Lead Plaintiff, Lead Counsel, and Consolidate [Docket Item 72]; and (5) Motion of Named Plaintiff Puerto Rico System of Annuities and Pensions for Teachers' Objection to the August 22, 2012 Opinion and Order [Docket Item 77]. This Opinion and the accompanying Order only address the motions objecting to or seeking relief from the August 22, 2012 Order, which are specifically the First Motion for Relief from this Court's August 22, 2012 Order [Docket Item 72] and the Motion of Named Plaintiff Puerto Rico System of Annuities and Pensions for Teachers' Objection to the August 22, 2012 Opinion and Order [Docket Item 77].

Christopher Biedermann, and William Carey on October 24, 2011.[3]
Three weeks later, on November 15, 2011, Plaintiff Tim Schuler
commenced Civ. No. 11-7085 in the District of New Jersey by
filing a Complaint against the same Defendants. The two
complaints made similar factual and legal allegations.

On June 13, 2012, Magistrate Judge Karen Williams issued a
Report and Recommendation ("R & R") [Docket Item 49] addressing
Motions To Appoint Lead Plaintiff, Appoint Counsel, And
Consolidate Related Actions filed by the Arkansas Public
Employees Retirement System and the Fresno County Employees'
Retirement Association ("Arkansas & Fresno") [Docket Item 4]; and
Motions To Consolidate Cases, Appoint Lead Plaintiff, And Appoint
Counsel filed by the Prosperity Group [Docket Item 9].

The R & R recommended that (1) the Court should consolidate
Steamfitters Local 449 Pension Fund v. Central European
Distribution Corp., Civ. No. 11-6247, and Schuler v. Central
European Distribution Corp., Civ. No. 11-7085; (2) Arkansas &
Fresno's Motion for Appointment as Lead Plaintiff should be
granted, and the Prosperity Group's competing Motion for
Appointment as Lead Plaintiff should be denied; and (3) Arkansas
& Fresno's selection of Cohen Milstein Sellers & Toll PLLC as

_____

[3]Defendant Carey was CEDC's Chairman, Chief Executive
Officer, and President. (Civ. No. 11-6247, Compl. ¶ 14.)
Defendant Biedermann was CEDC's Vice President and Chief
Financial Officer. (Id. ¶ 15.)

lead counsel and Barrack Rodos & Bacine as liaison counsel should be approved.

On August 22, 2012, this Court issued an Opinion and Order [Docket Items 60 & 61] adopting the R & R. The August 22, 2012 Order consolidated Civ. Nos. 11-6247 and 11-7085, appointed Arkansas & Fresno as lead plaintiff for the consolidated action, and approved the lead plaintiff's selection of Cohen, Milstein Sellers & Toll PLLC to serve as lead counsel and Barrack, Rodos, & Bacine to serve as liaison counsel. The August 22, 2012 Order also ordered that

> each new case that arises out of the subject matter of this Consolidated Action that is filed in or transferred to this Court shall be consolidated with this Consolidated Action. This Order shall apply thereto, unless a party objecting to this Order or any provision of this Order shall, within ten (10) days after the date upon which a copy of this Order is served on counsel for such party, file an application for relief from this Order or any provision herein and this Court deems it appropriate to grant such application.

August 22, 2012 Order at 3. This term, which ordered automatic consolidation of transferred cases subject to timely objection, gave rise to the motions at issue in this Opinion.

### B. Procedural History - Cases Transferred From Southern District of New York

On June 8, 2012, Plaintiff Jeffrey Grodko commenced Civ. No. 12-4512 in the Southern District of New York ("Grodko action") by filing a complaint against CEDC, Carey, and Biedermann. On August 7, 2012, Plaintiff Puerto Rico System of Annuities and Pensions

7

for Teachers ("Puerto Rico") commenced Civ. No. 12-6046 in the Southern District of New York ("Puerto Rico action") by filing a complaint against Defendants CEDC, Biedermann, and Carey.

On July 20, 2012, CEDC filed a Motion to Transfer Venue in the Grodko Action from the Southern District of New York to the District of New Jersey. [Civ. No. 12-5530, Docket Item 10.] On August 1, 2012, Plaintiff Grodko filed Opposition to the Motion to Transfer Venue. [Civ. No. 12-5530, Docket Item 14.] On August 28, 2012, however, Grodko and Harry Nelis, who had moved to become lead plaintiff in the Grodko action, filed a Notice of Non-Opposition to CEDC's Motion to Transfer Venue. [Civ. No. 12-5530, Docket Item 35.] In their Notice of Non-Opposition, Grodko and Nelis explained that this Court's Appointment of Lead Plaintiff and Lead Counsel in the August 22, 2012 Order "militate[d] in favor of th[eir] Action being prosecuted in the District of New Jersey, for purposes of coordination with the New Jersey Action." (Non-Opposition at 1.) In addition, Grodko and Nelis explained that they were persuaded by Arkansas & Fresno's representation that they did not intend to consolidate the Grodko action with CEDC I. (Non-Opposition at 1.)

Puerto Rico's counsel then filed a letter with the Southern District of New York judge, noting that the Grodko action was going to be transferred and requesting transfer of the Puerto

Rico action to serve judicial economy. [Civ. No. 12-5531, Docket Item 9].

On September 5, 2012 the Grodko action was transferred to the District of New Jersey, becoming Civil Action No. 12-5530 in this District. The Puerto Rico action was also transferred into this District, becoming Civ. No. 12-5531.

Once the Grodko and Puerto Rico actions arrived in the District of New Jersey, pursuant to the August 22, 2012 Order, the two actions were deemed consolidated with CEDC I, classified as member cases, and terminated as separate cases.

Plaintiff Jeffrey Grodko and lead plaintiff movant Harry Nelis then filed a Motion for Relief from the Court's August 22, 2012 Order [Docket Item 72], arguing that the Grodko action and CEDC I were factually distinct and consolidation was unwarranted. Defendant CEDC filed Opposition to the Motion for Relief [Docket Item 92], and Grodko and Nelis filed a Reply [Docket Item 99]. Plaintiff Puerto Rico also filed an Objection to the August 22, 2012 Opinion and Order [Docket Item 77], objecting to Arkansas & Fresno' lead plaintiff appointment. Lead Plaintiffs Arkansas & Fresno filed Opposition to Puerto Rico's Objection [Docket Item 89], and Puerto Rico filed a Reply [Docket Item 100].

**C. Factual Background - CEDC I**

CEDC I is a federal securities action brought on behalf of CEDC shareholders pursuing remedies under §§ 10(b) and 20(a) of

the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder. CEDC I involves shareholders who purchased CEDC common stock between August 5, 2010 and February 28, 2011 ("CEDC I class period"). (Civ. No. 11-6247, Compl. ¶ 1.) The action alleges that Defendants made materially false and misleading statements regarding CEDC's vodka business that deceived the public, artificially inflated CEDC securities' prices, and caused the public to purchase the stock at artificially inflated prices. (Id. ¶ 16.) Defendants allegedly failed to disclose double digit declines in CEDC's vodka portfolio, growing loss of vodka market share, adverse effects from a new vodka product launch, and an excise tax issue impacting vodka production in Russia. (Id. ¶¶ 24, 29, 31.) These problems culminated in March of 2011 when CEDC took a $131 million non-cash impairment charge because the value of Polish vodka brand trademarks had deteriorated. (Id. ¶ 32.)

### D. Factual Background - Grodko action

The Grodko action is also a federal securities action against Defendants CEDC, Biedermann, and Carey brought under §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder. It involves shareholders who purchased any CEDC securities, not only CEDC common stock, between March 1, 2010 and June 4, 2012. (Civ. No. 12-5530, Compl. ¶ 1.) This class period begins earlier, ends

later and, essentially, includes the entire CEDC I class period, which is August 5, 2010 to February 28, 2011. The Grodko action involves CEDC's failure to account for retroactive trade rebates provided to customers of its main operating subsidiary in Russia, causing a $30-40 million reduction in the CEDC's previously-reported consolidated net sales, operating profit, and accounts receivable for the period of January 1, 2010 through December 31, 2011. (Id. ¶ 3.)

### E. Factual Background - Puerto Rico Action

The Puerto Rico action is similar to the Grodko action. The class period, March 1, 2010 to June 4, 2012, is the same. (Civ. No. 12-5531, Compl. ¶ 1.) The proposed class, all persons who purchased CEDC securities during the class period, is the same. (Id. ¶ 1.) Like the Grodko action and unlike CEDC I, the Puerto Rico action is not limited to purchasers of CEDC common stock. In addition, like Grodko, this action involves CEDC's alleged failure to properly account for trade rebates provided to customers of its main operating subsidiary in Russia. (Id. ¶ 48.)


## III. OVERVIEW OF FIRST MOTION FOR RELIEF AND SUBSEQUENT BRIEFING

This section outlines Grodko and Nelis' Motion for Relief from the Court's Order, lead plaintiff Arkansas & Fresno's response, and Defendant CEDC's Opposition.

11

### A. Motion for Relief

Plaintiff Grodko and lead plaintiff movant Harry Nelis filed a Motion for Relief from this Court's August 22, 2012 order. [Docket Item 72.] They argued that the Grodko action is not related to CEDC I for the following reasons: (1) The Grodko action has a larger class period, March 1, 2010 through June 4, 2012 as compared to CEDC I's period of August 5, 2010 to February 28, 2011. (2) CEDC I relates to Defendants' misstatements regarding CEDC's vodka production and distribution business, whereas the Grodko action alleges that CEDC failed to account for retroactive trade rebates provided to customers of CEDC's main operating subsidiary. (3) Defendants' knowing or reckless misstatements regarding the Russian trade rebates have no connection with their knowing or reckless misstatements regarding the Polish vodka market. And (4) the distinct class periods and factual allegations require different evidence, including different press releases, witnesses, and corrective disclosures. Nelis and Grodko also stated that they may add CEDC's auditor as a defendant, an addition that would not comport with the CEDC I allegations. Essentially, Grodko and Nelis claimed that "there is no subject matter overlap whatsoever" between CEDC I and the Grodko action. (Mem. Law Supp. Mot. Relief From Order ("Mot. Relief"), at 5.)

12

Grodko and Nelis also noted that Arkansas & Fresno, the CEDC I lead plaintiffs, lack standing to represent the proposed Grodko action class because they sold their shares before the Grodko class period concluded and, as a result, will not pursue the Grodko action claims. In their Reply [Docket Item 99], Grodko and Nelis emphasized that consolidation with CEDC I would prejudice them because Arkansas & Fresno will neither protect nor prosecute their claims. Finally, they stated that, although consolidation was not warranted, they would coordinate discovery when practicable.

### B. Lead Plaintiff Arkansas & Fresno's Response to Motion for Relief

Arkansas & Fresno, the CEDC I lead plaintiffs, filed a Response [Docket Item 88] to Grodko and Nelis' Motion for Relief agreeing that CEDC I is distinct from the Grodko and Puerto Rico actions. Arkansas & Fresno confirmed that, when they file a consolidated complaint, they will not expand CEDC I to include the Grodko action claims. They also agreed to coordinate discovery to maximize efficiency and minimize the burden on Defendants and the Court.

### C. Defendants' Opposition to Motion for Relief

Defendant CEDC filed Opposition [Docket Item 92] to Grodko and Nelis' Motion for Relief from the August 22, 2012 Order. CEDC argued that Consolidation was appropriate because CEDC I and the Grodko action allege that "the same defendants, in the same press

13

releases and SEC filings (among others), over the same period of time (and at additional times), made alleged misstatements and omissions that fraudulently concealed the Company's true fiscal condition. . . ." (CEDC Opp'n Mot. Relief, at 2.) Both actions essentially involve, CEDC argued, alleged misstatements and errors that artificially inflated the price of CEDC securities. The witnesses and documents are, CEDC contends, substantially similar.[4]

CEDC argued that consolidation was warranted because (1) consolidation of class action securities fraud actions is the norm; (2) one common question of law or fact is enough to establish commonality under the consolidation rules; (3) the Grodko and CEDC I actions arise out of the same subject matter and substantially overlap; (4) the Grodko and CEDC I actions make the same legal claims; and (5) Grodko and Nelis have not identified any specific risk of prejudice or confusion that outweighs the risk of inconsistent adjudications and the burden of separate trials.

---

[4]In its Opposition to the Motion for Relief, CEDC claimed that Puerto Rico's decision not to object to consolidation, even though it filed an objection to the August 22, 2012 Order's appointment of Arkansas & Fresno as lead plaintiff, shows that the Grodko and CEDC I actions arose out of the same subject matter because the Puerto Rico and Grodko actions are materially identical. Puerto Rico did not file a response to the Motion for Relief. Absent a filing from Puerto Rico indicating its intentions, the Court does not presume the meaning of Puerto Rico's decision not to object to consolidation.

**IV. PUERTO RICO'S OBJECTION AND SUBSEQUENT BRIEFING**

This section outlines Puerto Rico's objection, Arkansas & Fresno's opposition, Puerto Rico's reply, Defendant CEDC's statement of its position, and the joinder of Grodko action lead plaintiff applicant the Prosperity Subsidiary Group.

**A. Puerto Rico's Objection**

Puerto Rico filed a motion [Docket Item 77] objecting to the Court's selection of lead plaintiff and lead counsel in the August 22, 2012 Order. Puerto Rico objected because the Puerto Rico and Grodko actions allege claims for a much larger class period and for a larger class of purchasers (purchasers of all CEDC securities, not only common stock). Puerto Rico's transactions occurred entirely during the extended class period and, therefore, it could not have been considered as lead plaintiff for CEDC I. Its losses "consist entirely of trades in the period not encompassed by [CEDC I]." (Puerto Rico Objection at 10.) Puerto Rico also argued that it had no notice of the CEDC I case.

Puerto Rico argued that it is entitled to consideration as lead plaintiff because it filed its complaint before the lead plaintiff application deadline expired in the Grodko action, and its losses were larger than Arkansas & Fresno's losses. It asked

15

the Court to reopen the lead plaintiff question to consider all applicants from the Grodko action.

In its Objection, Puerto Rico noted that the Grodko and Puerto Rico actions "differ from [CEDC I], not only in terms of the length of the class period (7 months versus 27 months), the composition of the class (purchasers of common stock versus purchasers of securities), but also with respect to the wrongdoing at hand." (Puerto Rico Objection at 7.)

**B. Arkansas & Fresno's Opposition**

Arkansas & Fresno filed Opposition [Docket Item 89] to Puerto Rico's Objection. Arkansas & Fresno argued that Puerto Rico cannot challenge the Court's August 22, 2012 lead plaintiff determination because Puerto Rico never filed a lead plaintiff motion in CEDC I, is not a CEDC I class member, has no standing to assert any claims from CEDC I, and cannot serve as lead plaintiff in CEDC I. They also argued that Puerto Rico missed the filing deadlines for objecting to the Magistrate Judge's Report and Recommendation and missed the filing deadline for CEDC I lead plaintiff applications. As a result of these missed deadlines, Arkansas & Fresno argued that Puerto Rico is legally prohibited from challenging the August 22, 2012 Order's terms, with the exception of the provision that consolidated transferred or newly filed actions with CEDC I. They also argued that the August 22, 2012 Order allows a party to file an application "for relief from

16

this Order," thus indicating that a transferred party can request that the Order not apply to it, not that a transferred party can seek to overturn the Order's lead plaintiff and lead counsel appointments.

Arkansas & Fresno also argued that Puerto Rico's claim that it had no notice of the lead plaintiff proceedings in CEDC I lacks merit because Puerto Rico's counsel, Robbins Geller, issued CEDC I's lead plaintiff notice and filed a lead plaintiff motion in CEDC I on behalf of the Prosperity Group, a different client.

Arkansas & Fresno also argued that Puerto Rico's objection assumes that CEDC I will litigate the claims described in the Grodko and Puerto Rico actions. But Arkansas & Fresno do not intend to litigate the Russian trade rebate claims. Because Arkansas & Fresno will not litigate the Puerto Rico claims and will not expand the CEDC I complaint to include those claims, they argue that Puerto Rico's arguments about reopening the lead plaintiff question in CEDC I are erroneous.

Arkansas & Fresno argued that "the Objection is nothing more than one component of a legally and factually baseless effort to seize control of both CEDC I and II driven by the same lawyers who previously have attempted and failed to secure a lead position in CEDC I. . . ." (Arkansas & Fresno Response to Puerto Rico Objection at 3.)

### C. Puerto Rico's Reply

Puerto Rico filed a Reply [Docket Item 100] to Arkansas & Fresno's Opposition. In its Reply, Puerto Rico emphasized that it

objected to the August 22, 2012 Order because it, not Arkansas &
Fresno, is the best lead plaintiff candidate. Puerto Rico
emphasized that Arkansas & Fresno are unwilling to represent the
plaintiffs from the Puerto Rico and Grodko actions and that those
actions have already been consolidated with CEDC I, thus
subjecting those plaintiffs to Arkansas & Fresno as lead
plaintiff. It also argued that it had the right to object to
Arkansas & Fresno's lead plaintiff appointment because the August
22, 2012 Order allowed transferred parties to "file an
application for relief from this Order or any provision herein."
The language "any provision herein" includes, Puerto Rico argues,
the provision appointing lead plaintiff. And Puerto Rico could
not have moved for lead plaintiff appointment in CEDC I because
it "had no trades in the CEDC I class period." (Puerto Rico Reply
at 8.) Even though Puerto Rico could not have applied to be the
CEDC I lead plaintiff, it argues that it is still qualified to
prosecute the CEDC I claims as lead plaintiff for the entire
action because lead plaintiffs need not have standing to sue on
each claim in a complaint. And finally, Puerto Rico argued that
Arkansas & Fresno's attack against Puerto Rico's counsel was
unwarranted, unprofessional, and ad hominem.

   **D. Defendant CEDC's Position**

   In its Opposition to Grodko and Nelis' Motion for Relief
from the August 22, 2012 Order, CEDC noted that it "takes no

position" on Puerto Rico's Objection and that it preserves any rights, defenses, and objections that it may later assert regarding certification of the class. (CEDC Opp'n Mot. Relief, at 1 no.2.)

**E. The Prosperity Subsidiary Group's Joinder**

The Prosperity Subsidiary Group, which consists of Protsvetaniye Holdings Limited, Medvezhonok Holdings Limited, Lancrenan Investments Limited, and Roselia Limited, moved for lead plaintiff appointment in the Grodko Action. [Docket Item 80.] It filed a brief notice joining Puerto Rico's objection. [Docket Item 74.][5]

**V.    STANDARD OF REVIEW FOR CONSOLIDATION**

Fed. R. Civ. P. 42(a) states that "[i]f actions before the court involve a common question of law or fact, the court may . . . consolidate the actions or issue any other orders to avoid unnecessary cost or delay." Rule 42(a)'s language demonstrates the Court's discretion: The Court "may" consolidate the actions; consolidation is not mandatory. In addition, the Rule

---

[5]The Prosperity Subsidiary Group's Notice [Docket Item 74] comes before Puerto Rico's objection [Docket Item 77] in the docket order because Puerto Rico originally filed its objection as a letter [Docket Item 73]. The Prosperity Subsidiary Group's Notice joined Puerto Rico's letter. Puerto Rico refiled its letter as a motion [Docket Item 77] at chambers' request.

incorporates flexibility: the court "may" consolidate or issue

"any other order" to avoid unnecessary expense or delay.

Case law affirms that this standard is highly discretionary.

Under Rule 42(a), "a District Court has broad discretion to

determine whether to consolidate cases. . . ." In re Mock, 398 F.

App'x 716, 718 (3d Cir. 2010); see also Wright & Miller,

Consolidation--Discretion of Court, 9A Fed. Prac. & Proc. Civ. §

2383 (3d ed.) ("district court is given broad discretion to

decide whether consolidation under Rule 42(a) would be desirable

and the district judge's decision inevitably is highly

contextual"). Common questions of law or fact do not necessitate

consolidation: "The mere existence of common issues, however,

does not require consolidation. . . . Once a common question has

been established, the decision to consolidate rests in the sound

discretion of the district court." In re Consol. Parlodel Litig.,

182 F.R.D. 441, 444 (D.N.J. 1998) (internal citations omitted).

In deciding whether to consolidate actions under Rule 42(a),

> the court must balance the risk of prejudice and possible
> confusion against the risk of inconsistent adjudications
> of common factual and legal issues, the burden on the
> parties and witnesses, the length of time required to
> conclude multiple lawsuits as against a single one, and
> the relative expense to all concerned of the single-trial
> and multiple-trial alternatives.

A.F.I.K. Holding SPRL v. Fass, 216 F.R.D. 567, 570 (D.N.J. 2003)

(internal citations omitted). These factors require the district

court judge to examine the facts and circumstances of each

individual case, thus making the decision "highly contextual."
Wright & Miller § 2383.

## VI. ANALYSIS - GRODKO AND NELIS' MOTION FOR RELIEF

The Court will grant the Motion for Relief and de-
consolidate the Grodko action to prevent prejudice to plaintiffs
and claims in those matters. Because the Puerto Rico action is
similar to the Grodko action, the Court will also de-consolidate
that action and consolidate the Grodko and Puerto Rico actions
with each other. The Grodko, Puerto Rico, and CEDC I actions will
be coordinated for discovery and case management purposes to
avoid prejudice to the Defendants.

### A. The Court Will Grant the Motion for Relief

The Court will grant Grodko and Nelis' Motion for relief.
Consolidating the Grodko action with CEDC I is not warranted at
this time.

The Court recognizes that the Private Securities Litigation
Reform Act ("PSLRA") permits consolidation of cases with
"substantially the same claim or claims arising under" the
securities laws. 15 U.S.C. § 78-u(a)(3)(B)(ii). In its
Opposition, CEDC states that "the PSLRA directs that cases should
be consolidated where there is 'more than one action on behalf of
a class asserting substantially the same claim or claims. . . .'
15 U.S.C. § 78u-4(a)(3)(B)(ii)." (CEDC Opp'n Mot. Relief at 9

21

(emphasis added).) The Court does not find that the PSLRA directs consolidation. The statute that CEDC cited states

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination required by clause (i) until after the decision on the motion to consolidate is rendered. As soon as practicable after such decision is rendered, the court shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions in accordance with this paragraph.

15 U.S.C. § 78u-4(a)(3)(B)(ii). Clause (i), to which the statute refers, describes the process by which a court should appoint a lead plaintiff. The PSLRA therefore directs that consolidation decisions "shall" be "rendered" before lead plaintiff decisions. The PSLRA does not mandate that consolidation must happen; it mandates that consolidation decisions must precede lead plaintiff decisions. Essentially, a district court "may not choose a lead plaintiff, and approve lead counsel, until it rules on any pending motions to consolidate." In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 430-31 (E.D. Va. 2000) (citing 15 U.S.C. § 78u-4(a)(3)(B)(ii)); see also In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 806 (N.D. Ohio 1999) ("The PSLRA requires that the Court address any outstanding motions to consolidate before considering motions for the appointment of counsel"). The Court is following the statute here, as it will

22

not decide the pending lead plaintiff motions in the Grodko

action until after it has decided the consolidation question.[6]

The Court recognizes that many cases use directive, instead

of permissive, language in discussing consolidation under the

PSLRA. See, e.g., In re Lucent Technologies Inc. Sec. Litig., 221

F. Supp. 2d 472, 480 (D.N.J. 2001) ("The PSLRA, moreover, directs

that cases should be consolidated where there is 'more than one

action on behalf of a class asserting substantially the same

claim or claims.' 15 U.S.C. § 78u-4(a)(3)(B)(ii)") (emphasis

added); A.F.I.K. Holding SPRL v. Fass, 216 F.R.D. 567, 570

(D.N.J. 2003) (same). The PSLRA's text is also somewhat unclear

because the last clause in 15 U.S.C. § 78u-4(a)(3)(B)(ii) refers

to "the consolidated actions," which implies that consolidation

is the likely outcome. In addition,  "consolidation is common in

---

[6]The Court previously appointed CEDC I's lead plaintiff, but
the CEDC I lead plaintiff motions were filed long before the
Grodko complaints were filed, much less the Motion for Relief.
The CEDC I lead plaintiff motions were filed on December 23,
2011. [Docket Items 4 & 9]. Magistrate Judge Karen Williams
issued a Report and Recommendations resolving, inter alia, the
lead plaintiff motions on June 13, 2012. [Docket Item 49.] After
the parties briefed objections to the Report and Recommendations
[Docket Items 50, 53, 54, 57, & 58], the Court issued the August
22, 2012 Opinion and Order [Docket Items 60 & 61]. The Grodko
complaint was filed in the Southern District of New York on June
8, 2012, and the Puerto Rico complaint was filed there on August
7, 2012. The actions were transferred into the District of New
Jersey on September 4, 2012 and docketed before this Court on
September 5, 2012. Therefore, the Court could not have decided
any consolidation issues regarding the Grodko and Puerto Rico
actions before it decided the CEDC I lead plaintiff motions,
since Grodko and Puerto Rico were not even on this docket on
August 22, 2012.

federal securities class action cases."  In re Cendant Corp.
Litig., 182 F.R.D. 476, 478 (D.N.J. 1998) (internal citation
omitted).

     But at least one case supports the Court's interpretation
that consolidation is permissive, rather than mandatory under the
PSLRA, see, e.g., In re Cendant Corp. Litig., 182 F.R.D. 476, 478
(D.N.J. 1998) ("the PSLRA permits consolidation of cases with
'substantially the same claim or claims arising under' the
securities laws. 15 U.S.C. § 78-u(a)(3)(B)(ii)") (emphasis
added). The PSLRA's text does not specifically direct courts to
consolidate related actions; it directs courts to decide
consolidation motions before lead plaintiff motions. In addition,
"[a]lthough the timing of consolidation is governed by the PSLRA,
the principles governing the consolidation determination are
found not in the PSLRA, but in Rule 42, Fed. R. Civ. P." In re
MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 431 (E.D.
Va. 2000). There is no question that, under Rule 42(a),
consolidation is a matter of the Court's discretion.

     At this time, the Court finds that consolidation with CEDC I
is not warranted.  The Court acknowledges that the two actions
involve the same Defendants and the same type of legal claims,
that the CEDC I class period is subsumed within the Grodko class
period, that there will be considerable overlap in terms of
witnesses and documents during discovery, and that different

class periods need not defeat consolidation (see e.g. In re
Cendant Corp. Litig., 182 F.R.D. 476, 478-79 (D.N.J. 1998)).

     But the differences are stark. Based on the pleadings thus
far, it appears to the Court that the Grodko claims solely
involve the accounting actions of a CEDC subsidiary in Russia;
whereas the CEDC I claims resolve around CEDC's management of its
vodka portfolio. In addition, if these actions remain
consolidated, the Court must either appoint a new lead plaintiff
or allow Arkansas & Fresno to neglect the Grodko claims. Neither
option is palatable. In exercising its discretion to consolidate
cases, a court should weigh "the interests of judicial economy
against the potential for new delays, expense, confusion, or
prejudice." In re Consol. Parlodel Litig., 182 F.R.D. 441, 444
(D.N.J. 1998) (internal citations omitted). Consolidation is
unwarranted when prejudice would result. Arkansas & Fresno have
indicated that they will not prosecute the Grodko action claims.
The Court would prejudice Grodko and Nelis by subjecting them to
a lead plaintiff that would neglect their claims.

     In the alternative, if the Court vacated Arkansas & Fresno's
lead plaintiff appointment, the Court would prejudice Arkansas &
Fresno and the entire CEDC I class. Arkansas & Fresno spent eight
months litigating to determine their appointment as lead
plaintiff. The Court's August 22, 2012 Opinion [Docket Item 60]
explained why Arkansas & Fresno are the appropriate lead

plaintiffs. The Court will not summarize that opinion here, aside from noting that Arkansas & Fresno were appointed because they have substantial interests representative of the entire class and the other lead plaintiff applicant, the Prosperity Group, was subject to unique defenses that would require substantial time and expense to litigate, thus prejudicing the class.

In another alternative, Puerto Rico wishes to be lead plaintiff, but it had no transactions during the CEDC I class period and has acknowledged that it could not have applied to be the CEDC I lead plaintiff. Puerto Rico cites several cases for the proposition that the lead plaintiff need not have standing to bring every claim. <u>See</u>, <u>e.g.</u>, <u>Hevesi v. Citigroup Inc.</u>, 366 F.3d 70, 82 (2d Cir. 2004) ("Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. . . . [I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim.") But these cases do not stand for the proposition that standing is unnecessary; they note that there must be a named plaintiff or another class representative to represent the claims on which the lead plaintiff lacks standing. For example, Puerto Rico cites <u>In re Countrywide Fin. Corp. Sec. Litig.</u>, 588 F. Supp. 2d 1132, 1157 (C.D. Cal. 2008) for the proposition that "nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims." But Puerto

26

Rico's citation is missing a relevant clause. In full, the quote reads: "nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims so long as lead plaintiffs identify and include named plaintiffs who have standing." Id. (internal citation omitted). See also Hevesi at 82 (affirming district court's determination that participation of three named plaintiffs and proposed class representatives "ensures that the litigation will continue to focus on the claims raised by bondholders [even though the lead plaintiff did not purchase bonds], and that there are representatives of the Class with claims typical of purchasers of both types of securities").

It seems clear, therefore, that the Court must ensure that all claims receive sufficient attention from representatives with interest in prosecuting them. If, arguendo, Puerto Rico were appointed lead plaintiff instead of Arkansas & Fresno, the Court would still need to ensure that the CEDC I claims received adequate attention, which would require appointing co-lead plaintiffs, named plaintiffs, or class representatives. The Court does not analyze Puerto Rico's lead plaintiff application here; the Court is simply determining whether it would be best for CEDC I and the Grodko and Puerto Rico actions to proceed as one consolidated action. At this stage, it seems prudent to de-consolidate the actions from CEDC I to ensure that no parties and no claims are prejudiced.

Puerto Rico's Objection notes that the Prosperity Subsidiary Group, which sought lead plaintiff appointment in the Grodko action, sustained the largest financial losses of all the Grodko action lead plaintiff applicants. Puerto Rico's objection sought to vacate the CEDC I lead plaintiff appointment and have the Court consider the lead plaintiff applicants from the Grodko action, and the Prosperity Subsidiary Group joined that objection [Docket Item 74]. The Court will therefore also consider whether the Prosperity Subsidiary Group could prosecute all claims from both CEDC I and the Grodko action and thus serve as lead plaintiff to unite the different actions. The Court finds that appointing the Prosperity Subsidiary Group as lead plaintiff for all CEDC-related actions is not appropriate at this time. First, the PSLRA mandates that motions to consolidate must be decided before lead plaintiff motions. 15 U.S.C. § 78u-4(a)(3)(B)(ii). The Court is presently deciding only the consolidation question, not the Grodko action's lead plaintiff question.

And, secondly, it is not immediately apparent to the Court that the Prosperity Subsidiary Group could serve as lead plaintiff for all actions. It is a subset of the Prosperity Group, which applied to be lead plaintiff in CEDC I and which the Court did not select because the Prosperity Group was subject to unique defenses that would prejudice the class. In its CEDC I lead plaintiff application, the Prosperity Group alleged that it

28

had suffered $12.9 million in losses. In its Grodko action lead plaintiff application, the Prosperity Subsidiary Group alleged that it had suffered $12.9 million in losses. In other words, the Prosperity Group in CEDC I and the Prosperity Subsidiary Group in the Grodko action both applied to be lead plaintiff and both alleged the same losses, even though those two actions involve different factual claims, i.e. CEDC's management of its vodka portfolio versus CEDC's management of its subsidiary's trade rebates. Harry Nelis, another lead plaintiff applicant in the Grodko action, argued that the Prosperity Subsidiary Group is subject to unique defenses because it cannot show loss causation as lead plaintiff for the Grodko action. Nelis argued that the Prosperity Subsidiary Group sold its shares before CEDC issued corrective disclosures regarding the improper accounting for the Russian trade rebates, thus making CEDC incapable of showing that its losses were caused by the Grodko action's core claims. The Prosperity Subsidiary Group disputed this characterization. The Court is not deciding here whether Nelis' argument is meritorious, and the Court certainly is not choosing a Grodko action lead plaintiff here. The Court simply notes that it is not immediately apparent that the Prosperity Subsidiary Group could serve as lead plaintiff for either the Grodko action or all three actions, that resolving the Grodko action lead plaintiff issue will require careful attention, and that the PSLRA directs the

Court to resolve consolidation issues before lead plaintiff issues.

Given the differences between CEDC I and the Grodko action, the complexities of the lead plaintiff issues before the Court, and the idiosyncracies of the lead plaintiff applicants, the Court finds that consolidation is not warranted at this time. The Court will exercise its broad discretion under Rule 42(a): Grodko and Nelis' Motion for Relief will be granted. The Grodko action will not be consolidated with CEDC I.

### B. The Puerto Rico Action Will Also Be De-consolidated

Because Puerto has emphasized that its claims arose during the extended class period, not the CEDC I class period, the Court will again exercise its broad discretionary powers and de-consolidate the Puerto Rico action from CEDC I. Puerto Rico did not request de-consolidation in its motion, but the court's discretionary consolidation powers do not require a motion. The Third Circuit has explained that Rule 42(a) "confers upon a district court broad power, whether at the request of a party or upon its own initiative, to consolidate. . . ." Ellerman Lines, Ltd. v. Atl. & Gulf Stevedores, Inc., 339 F.2d 673, 675 (3d Cir. 1964). It seems logical that if the Court can consolidate actions upon its own initiative, it can de-consolidate them on its own initiative. In addition, the gravamen of Puerto Rico's objection was that Arkansas & Fresno should not be lead plaintiff for

30

Puerto Rico's claims. De-consolidating the Puerto Rico action from CEDC I ensures that Arkansas & Fresno will not be lead plaintiff for the Puerto Rico action and that Puerto Rico can seek lead plaintiff appointment for its claims.

**C. The Actions Will Be Coordinated for Discovery and Case Management Purposes**

Although the risk of prejudice militates against complete consolidation, CEDC has raised valid points about the overlap of discovery in the CEDC I and Grodko actions. CEDC argued that "discovery in the Grodko action and [CEDC I] will be focused on similar events, documents, and witnesses. . . ." (CEDC Opp'n Mot. Relief at 17.) Both actions involve the same Defendants, thus indicating that there will be some overlap in depositions and document production.

Grodko, Nelis, and Arkansas & Fresno have all communicated a willingness to coordinate regarding discovery. Rule 42(a)(3) gives the Court the power to "issue any other orders to avoid unnecessary cost or delay." In order to ensure effective coordination and to ensure that CEDC is not prejudiced by duplicative discovery requests, the Court hereby orders that the CEDC I, Grodko, and Puerto Rico actions shall be coordinated for discovery and case management purposes.[7]

_____

[7]The Court's coordination order shall be construed to have the same power and effect as an order consolidating the cases for discovery and case management purposes. The Court has ordered coordination, as opposed to consolidation, to ensure that the

After discovery concludes, the shape of these cases may change. If, at the conclusion of discovery, any party believes that consolidation for trial is warranted, the Court can revisit the issue at that time. Cf. In re Lucent Technologies Inc. Sec. Litig., 221 F. Supp. 2d 472, 482 (D.N.J. 2001) ("if the discovery process reveals a substantial reason why the actions should not be consolidated for the purpose of trial, this decision can be revisited").

**D. Consolidation of the Grodko and Puerto Rico Actions**

Although the Court has de-consolidated the Grodko and Puerto Rico actions from CEDC I, the question remains whether Grodko and Puerto Rico should be consolidated with each other. The matters were classified as related in the Southern District of New York [Civ. No. 12-5531, Aug. 14, 2012 Docket Entry "CASE ACCEPTED AS RELATED. Create association to 1:12-cv-04512"], and Puerto Rico sought consideration as a lead plaintiff applicant in the Grodko Action [Civ. No. 12-5530, Docket Item 32].

As noted above, Grodko and Puerto Rico are substantially identical. The class period of March 1, 2010 to June 4, 2012 is the same. The proposed class of all persons who purchased CEDC securities in the class period is the same, and the class is not limited to purchasers of common stock. Both actions share common

---

Hon. Karen M. Williams, U.S. Magistrate Judge, has full discretion as to the degree of coordination.

issues of law and fact arising from CEDC's alleged failure to properly account for trade rebates provided to customers of its main operating subsidiary in Russia. The causes of action arising under the Securities Exchange Act and Rule 10b-5 appear to be the same.

It only makes sense, where such common issues of fact and law exist, to consolidate Grodko and Puerto Rico with each other for all purposes, pursuant to Rule 42(a)(2), Fed. R. Civ. P. The Grodko/Puerto Rico consolidated case will be managed in conjunction with the CEDC I case for purposes of efficiency in discovery, while recognizing the distinct differences between the CEDC I and Grodko/Puerto Rico matters.

## VII. ANALYSIS - PUERTO RICO OBJECTION

The Court has granted Grodko and Nelis' Motion for relief and ordered that the Grodko action shall be de-consolidated from CEDC I. Because Puerto Rico's claims did not arise during the CEDC I class period, the Court has also de-consolidated Puerto Rico from CEDC I. As a result, Puerto Rico is no longer subject to Arkansas & Fresno as lead plaintiff, and its objection to Arkansas & Fresno's appointment will be denied as moot. The question of lead plaintiff in the Grodko/Puerto Rico consolidated case will be addressed shortly in a future opinion.

## VIII. CONCLUSION

Grodko and Nelis' Motion for Relief is granted. The Grodko and the Puerto Rico actions will be de-consolidated from CEDC I, but Grodko and Puerto Rico will be consolidated with each other for all purposes. Puerto Rico's Objection to Arkansas & Fresno's appointment as lead plaintiff in CEDC I is denied as moot. The CEDC I, Grodko, and Puerto Rico actions will be coordinated for discovery purposes and case management purposes only, before the Hon. Karen M. Williams, U.S. Magistrate Judge.


**November 8, 2012**
Date

**_s/ Jerome B. Simandle_**
JEROME B. SIMANDLE
Chief U.S. District Judge